IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE MOORE, individually and on behalf of a class of all persons and entities similarly situated,<br><br>                    Plaintiff,<br><br>     v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>                    Defendant. | Case No. 1:20-cv-00980<br><br>Judge Thomas M. Durkin |

**DEFENDANT CHARTER COMMUNICATIONS, INC.'S
MEMORANDUM IN SUPPORT OF RENEWED MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. PROCEDURAL HISTORY AND RELEVANT FACTUAL BACKGROUND ............... 2

    A. Procedural History and Plaintiff's Allegations ....................................................... 2

    B. Charter's Business Operations and Non-Existent Illinois Footprint....................... 3

    C. Charter Did Not Call or Authorize an Agent to Call Plaintiff in Illinois................ 4

III. ARGUMENT AND CITATION TO AUTHORITY......................................................... 5

    A. Legal Standards....................................................................................................... 5

        *1. Personal jurisdiction requires purposeful availment of the privilege of acting in the forum state.* ....................................................................................... 5

        *2. Plaintiff must allege a plausible factual basis to satisfy the burden of establishing that personal jurisdiction is consistent with due process.* .................. 7

    B. Charter Is Not Subject to General Jurisdiction ....................................................... 8

    C. Charter Is Not Subject to Specific Jurisdiction....................................................... 8

        *1. Charter did not purposefully direct calls to Plaintiff in Illinois.* ..................... 9

        *2. Plaintiff cannot establish specific personal jurisdiction under any agency theory.* ................................................................................................................ 10

            a. EXP did not have actual authority............................................................... 10

            b. EXP did not have apparent authority. ......................................................... 14

            c. Charter did not ratify EXP's alleged outbound calls to Illinois. .................... 15

## I.       INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(b)(2), Defendant ("Charter") respectfully requests dismissal of Plaintiff's First Amended Class Action Complaint ("FAC") for lack of personal jurisdiction.[1] In his original Complaint, Plaintiff—a repeat Telephone Consumer Protection Act ("TCPA") litigant—vaguely alleged Charter "or an unidentified third party calling on its behalf" violated the TCPA by making three marketing calls to his residential telephone number while it was registered on the National Do Not Call Registry ("NDNCR"). When Charter moved to dismiss, the Court gave Plaintiff the option of responding to Charter's motion or filing an amended complaint.

Plaintiff chose the latter option, dropped his claim that Charter placed the calls, made no effort to contend Charter is subject to general jurisdiction in Illinois, and attempted to support specific jurisdiction by alleging that Charter authorized an agent ("EXP") to call Plaintiff on its behalf. But Plaintiff still failed to set forth a plausible factual basis for jurisdiction based on vicarious liability. Plaintiff has alleged no facts supporting his conclusory allegations that Charter authorized EXP to make *outbound* telemarketing calls, and he has made <u>no</u> allegation (not even a conclusory one) that Charter authorized EXP to direct such calls *to Illinois*.

Nor could he, because a written agreement expressly prohibited EXP from making outbound calls and because Plaintiff's Illinois telephone number and residence address are outside the service area of Charter's subsidiaries and affiliates (the "Spectrum Entities"). Having chosen not to address these facts, Plaintiff has not and cannot plausibly allege that Charter waived the contractual prohibition so that EXP could make a call to Illinois from which Charter could not benefit.

---

[1] Pursuant to this Court's judicial preferences, Charter conferred with opposing counsel, at which time opposing counsel noted his objection.

Plaintiff also does not dispute that, after EXP allegedly made the calls at issue, he gave EXP a Florida address in purporting to order services and the purported order was canceled because that address belonged to an existing customer. Therefore, Plaintiff has not alleged and cannot prove that he detrimentally relied on any alleged authority of EXP to make the call on behalf of Charter, nor can he prove that Charter benefitted from the alleged outbound call or had any reason to know EXP directed the alleged call to a non-serviced residential number in Illinois. Instead, at most, Plaintiff alleges EXP had a contractual relationship with a Spectrum entity, which is insufficient to establish vicarious liability, under binding Seventh Circuit precedent.

For all of these reasons, as detailed below, Plaintiff cannot satisfy the constitutional touchstone of personal jurisdiction, because he has not alleged that Charter (directly or by imbuing EXP with actual or apparent authority) purposefully directed outbound telemarketing calls to Plaintiff in Illinois or knowingly ratified Illinois-directed calls (or any other calls) after they were made. Consequently, Plaintiff's FAC should be dismissed.

## II.   PROCEDURAL HISTORY AND RELEVANT FACTUAL BACKGROUND

### A.   Procedural History and Plaintiff's Allegations

Plaintiff's original Complaint alleged Charter, "or a third party calling on its behalf," violated the TCPA by making marketing calls to his residential telephone number at 630-XXX-1188 (the "Subject Number") while it was listed on the NDNCR. Dkt. 1 ("Compl.") ¶¶ 2, 19-21. Following Charter's initial Motion to Dismiss for Lack of Personal Jurisdiction, Dkt. 18, and the Court's subsequent order setting a schedule for briefing and amended pleadings, Dkt. 21, Plaintiff filed the FAC. *See generally* Dkt. 22 ("FAC").

The FAC concedes that Charter did not make the calls at issue and alleges Charter is vicariously liable because EXP had actual or apparent authority to make the calls on Charter's behalf or Charter ratified EXP's conduct in allegedly placing calls to Plaintiff in Illinois. FAC ¶¶

2, 19-70. As discussed *infra* Part C.2.a, however, Plaintiff fails to provide factual support for these conclusory allegations. Instead, Plaintiff purports to base his allegations on: (1) inapposite litigation that did not involve Charter or EXP and/or did not concern a retail partner like EXP that was **prohibited** from engaging in outbound telemarketing on behalf of Charter, FAC ¶¶ 30-35, 38-42; (2) EXP's online content that did not originate from Charter and omits any representation that Charter authorized EXP to make outbound telemarketing calls, FAC ¶¶ 46-47; and (3) emails from Charter that in no way suggest Charter knew EXP had allegedly made an outbound telemarketing call to Plaintiff, much less in Illinois, but rather only that EXP had submitted an order for service at a Florida residential address, FAC ¶ 67; Gelner Decl. at Ex. A ("Gelner Decl."), ¶¶ 10-13.

As to the specific calls, Plaintiff alleges that he received two calls from EXP on November 11, 2019, both of which he did not answer, and one call on November 12, 2019, during which an EXP telemarketing representative offered him "Spectrum and AT&T Services." FAC ¶¶ 50-59. On the November 12 call, Plaintiff alleges he feigned interest in cable and internet services to "sufficiently identify the calling party" and to obtain an order reference number, which he claims somehow "confirm[ed] Defendant's involvement." *Id*. ¶ 60-61. Additionally, he claims that, on that call, EXP stated it was running a credit check to see if he qualified for Charter's services and gave him an installation appointment. *Id*. ¶¶ 65-66. He also alleges that he received two follow-up emails from Charter asking him to complete his order but does not allege those emails gave any indication that Charter knew the order originated from an outbound call to Illinois. *Id*. ¶¶ 67-68.

### B.     Charter's Business Operations and Non-Existent Illinois Footprint

Charter is a publicly traded company that performs certain business functions for its subsidiaries and affiliates, which in turn provide cable, internet, and telephone services in 41 states. Dkt. 19-1 ("Flores Decl."), ¶ 6. Charter is a Delaware corporation with its principal place of business in Stamford, Connecticut. *Id*. ¶ 7. Charter is not registered to do business in Illinois and

3

has no business operations or corporate offices in Illinois. *Id.* ¶ 8. Rather, the Spectrum Entities conduct limited business in Illinois. *Id.* ¶¶ 9-14. That limited business does not include servicing the area associated with Plaintiff's residential telephone number that EXP allegedly called. *See* FAC ¶ 5 ("Plaintiff George Moore resides in the district."); Dkt. 19-2 ("Patnekar Decl."), ¶¶ 7-9 ("Plaintiff resides at 906 Chatham Drive, Carol Stream, Illinois," which address "is not part of the areas services by the Spectrum Entities"); Flores Decl., ¶ 19 ("The 603 area code is not part of areas serviced by Spectrum.").

### C. Charter Did Not Call or Authorize an Agent to Call Plaintiff in Illinois

After learning about the alleged calls through the original Complaint, Charter confirmed that neither it nor any of the Spectrum Entities' outbound telemarketing vendors ("OTM Vendors") made the three alleged calls on which Plaintiff premises his TCPA claim. Patnekar Decl., ¶¶ 10-11; Flores Decl., ¶ 20. As explained in Charter's prior motion, although the Spectrum Entities perform limited outbound telemarketing through one internal group—Telesales—neither that group nor its vendors made calls to the Subject Number, nor would they have called a residential number outside the coverage area. Patnekar Decl., ¶¶ 6-12.

Separate from its telemarketing vendors, the Spectrum Entities work with independent retailers to sell Spectrum services through certain approved marketing tactics, including direct mail and in-person sales, and ***specifically excluding telemarketing***. Gelner Decl., ¶¶ 6-7. The Spectrum Entities are entitled to terminate their relationship with retail partners when they violate the contractual prohibitions, including the prohibition against outbound telemarketing. Gelner Decl., ¶ 18. EXP was a former retailer[2] for one of the Spectrum Entities. *Id.* ¶ 8; Dkt. 19-4 ("Bhattacharya Decl."), ¶ 3. As a retail partner for a Spectrum Entity, EXP was required to comply

---

[2] Though the Spectrum Entity has been unable to determine whether EXP engaged in the conduct at issue, it nonetheless terminated EXP. *Id.* ¶ 19.

4

with all applicable laws, ordinances, and rules in fulfilling its contractual duties and was *expressly prohibited* from making *any outbound* telemarketing calls for Spectrum services. Gelner Decl., ¶¶ 6-9 & Ex. A; Bhattacharya Decl., ¶¶ 5-7.

Until Plaintiff filed his Complaint, Charter had no knowledge of the alleged calls and no reason to believe that retail partner EXP made outbound telemarketing calls to Illinois. Gelner Decl., ¶¶ 13-16. Indeed, EXP attests under oath that: (a) it never informed the Spectrum Entities about how it originated the attempted order; and (b) the Spectrum Entities had no knowledge regarding how the attempted order was generated. Bhattacharya Decl., ¶ 12. And, although EXP attempted to place an order for services that referenced the Subject Number, that is unremarkable given that EXP was permitted to place orders. Gelner Decl., ¶¶ 6, 8 & Ex. A. The critical unrefuted fact is: neither Charter nor any related entity could tell exactly how that attempted order originated—other than presumably through a channel that was not expressly prohibited by the contract—since EXP is independent and does not disclose that on a sale-by-sale level. Gelner Decl., ¶ 13; Bhattacharya ¶ 12. The attempted order was not completed because Spectrum's records indicated that a prior, active account holder resided at the Florida address provided by the consumer who attempted to place the order. Gelner Decl., ¶¶ 10-11.

### III.     ARGUMENT AND CITATION TO AUTHORITY

#### A.     Legal Standards

##### 1. Personal jurisdiction requires purposeful availment of the privilege of acting in the forum state.

Personal jurisdiction may be either "general" or "specific." *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014). Because Illinois' long-arm statute is coextensive with the Fourteenth Amendment, the question of personal jurisdiction—specific or general—is subject to a federal due process analysis. *Kipp v. Ski Enter. Corp. of Wisc., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015). Due

5

process requires that a defendant be sued in a forum state "based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "[I]t is essential in each case there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," ensuring a defendant will not be haled into a jurisdiction based on the "unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (citations omitted); *see also Walden*, 134 S. Ct. at 1123 ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."); *Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 918 (N.D. Ill. 2017) (Durkin, J.) ("*Walden* firmly established that, regardless of how foreseeable it may be that the defendant might be sued in a particular forum, due process is not satisfied where the plaintiff is the only link between the defendant and that forum.").

Even if conduct is "aimed at injuring" a plaintiff who resides in the forum state, that "is insufficient [to confer jurisdiction] where that conduct does not connect the defendant to the forum state itself." *Monco v. Zoltek Corp.*, 342 F. Supp. 3d 829, 836 (N.D. Ill. 2018) (Durkin, J.). That is because the defendant's purposeful availment of the privilege of acting in the forum state is the "constitutional touchstone" of personal jurisdiction. *Burger King*, 471 U.S. at 472; *see also Snow Sys., Inc. v. Sneller's Landscaping, LLC*, No. 18 C 5842, 2019 WL 1317746, at *3 (N.D. Ill. Mar. 22, 2019) (Durkin, J.) ("[U]nder *Walden*, the defendant's own allegedly tortious conduct must be directly connected to the forum state itself, and not just to the plaintiff who resides there, and that connection must be substantial.").

### *2. Plaintiff must allege a plausible factual basis to satisfy the burden of establishing that personal jurisdiction is consistent with due process.*

Plaintiff has the burden of alleging <u>facts</u> sufficient to establish a *prima facie* case of personal jurisdiction consistent with these bedrock constitutional principles. *See Monco*, 342 F. Supp. 3d at 836 (requiring plaintiff "to set forth a plausible factual basis" for personal jurisdiction). "[T]he plausibility requirement means that those facts, construed in Plaintiff's favor, must allow the Court to draw a *reasonable*, as opposed to a *speculative*, inference" that those facts support Plaintiff's claim. *Spector v. Mondelez Int'l, Inc.*, No. 15 C 4298, 2017 WL 4283711, at *1 (N.D. Ill. Sept. 27, 2017) (Durkin, J.) (emphasis in original).

Conclusory and contradictory allegations—which are all Plaintiff offers—also cannot satisfy the constitutional burden. *See Richter v. INSTAR Enters. Int'l, Inc.*, 594 F. Supp. 2d 1000, 1016 n.6 (N.D. Ill. 2009) ("Where factual assertions amount only to vague generalizations or unsupported allegations, they are not enough to support personal jurisdiction."); *see also Monotype Corp. v. Ponzi*, No. 95-cv-3817, 1996 WL 327986, at *4 (N.D. Il. 1996) (dismissing complaint for lack of personal jurisdiction where plaintiff failed to allege a *prima facie* case of direct liability of corporate defendants, in part, due to "conflicting allegations within the complaint").

Unrefuted facts stated in Charter's declarations must be taken as true. *Shanghai Daisy, LLC v. PositivEnergy, Inc.*, No. 19 C 5901, 2020 WL 4365883, at *4 (N.D. Ill. July 30, 2020) (Durkin, J.) (citation omitted). Additionally, to the extent Plaintiff purports to refute Charter's declarations in response to this Motion, he cannot do so with mere allegations, but must "submit affirmative evidence" in support of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). As demonstrated below, in view of Plaintiff's factual allegations and Charter's unrefuted evidence, Plaintiff has not established a *prima facie* case of jurisdiction, and his claim should be dismissed. Should the Court find that there are material facts

in dispute, however, Charter respectfully requests that the Court hold an evidentiary hearing and require Plaintiff to establish jurisdiction by a preponderance of the evidence. *Id*. at 782.

### B. Charter Is Not Subject to General Jurisdiction

It is clear from Plaintiff's FAC that he does not contend Charter is subject to general jurisdiction, and Charter's jurisdictional evidence confirms the same. Charter is a Delaware corporation with its principal place of business in Stamford, Connecticut, Flores Decl., ¶ 7, meaning Plaintiff must show Charter "is fairly regarded as at home" in Illinois to show that general jurisdiction is proper. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Plaintiff does not attempt to—and cannot—satisfy this heavy burden because Charter is not registered to do business in Illinois and does not have employees, operations, corporate offices, or real estate in Illinois. Flores Decl., ¶¶ 8, 12, 14. These facts, standing alone, require dismissal of Plaintiff's FAC under a general jurisdiction analysis. *See*, *e.g*., *Daimler*, 124 S. Ct. at 761; *Goodyear*, 564 U.S. at 924.

### C. Charter Is Not Subject to Specific Jurisdiction

Plaintiff's FAC is also subject to dismissal under a specific jurisdiction analysis. For a court to exercise specific jurisdiction over a defendant, a plaintiff must plead and prove the defendant: "(1) [engaged in] intentional conduct . . . ; (2) expressly aimed at the forum state; (3) with . . . knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo v. Dworkin,* 601 F.3d 693, 702 (7th Cir. 2010) (applying *Calder v. Jones*, 465 U.S. 783, 788 (1984)). Despite two opportunities, Plaintiff has not alleged a *prima facie* case of specific jurisdiction. Nor could he, as Charter's unrefuted evidence proves it did not purposefully direct telemarketing calls to Plaintiff in Illinois, nor authorize EXP to do so. *See Guaranteed Rate*, 264 F. Supp. 3d at 920 (dismissing plaintiff's claim for lack of jurisdiction because defendant's activities did not target Illinois, regardless of whether they targeted plaintiff).

8

### *1. Charter did not purposefully direct calls to Plaintiff in Illinois.*

Despite having the opportunity to review Charter's prior motion and declarations, Plaintiff fails to allege any facts purporting to rebut Charter's evidence that it purposefully ***avoided*** directing outbound telemarketing calls to Plaintiff in Illinois. Plaintiff concedes that Charter did not directly make the alleged calls and makes no mention of Charter's proof that EXP not only lacked authority to make outbound calls, but also was ***specifically prohibited*** from making such calls. *See* FAC ¶ 2; Gelner Decl., ¶¶ 6-9 & Ex. A; Bhattacharya Decl., ¶¶ 5-7.

Plaintiff's FAC also lacks any allegation (conclusory or factual) that Charter authorized EXP to call a residential telephone number that was outside Charter's coverage area. Further dispelling any inference that Charter purposefully directed the calls at issue to Plaintiff in Illinois, Plaintiff alleges the caller "stated that he was calling from 'Spectrum *and AT&T Services*.'" FAC ¶ 59 (emphasis added). But Charter does not market competitor's services on telemarketing calls and therefore would not have purposefully authorized EXP to make such a call. Patnekar Decl., ¶ 9. Additionally, Charter's jurisdictional evidence confirms it had absolutely no connection to, or affiliation with, the alleged calls. *See* Flores Decl. ¶¶ 20-22; Patnekar Decl., ¶¶ 6, 10-12. The ***only*** parties vested with actual authority to make outbound telemarketing calls on behalf of any Spectrum Entity—the OTM Vendors—did not make them. Patnekar Decl., ¶¶ 6, 10-11.

Based on these unrefuted facts and Plaintiff's silence, EXP's alleged outbound telemarketing calls to Plaintiff must be viewed as unilateral, *ultra vires* contacts with Illinois, which necessarily are the type of "random, fortuitous, or attenuated" contacts that cannot establish specific personal jurisdiction. *Burger King*, 471 U.S. at 475; *Walden*, 134 S. Ct. at 1123; *see also Grayson v. Anderson*, 816 F.3d 262, 269-71 (4th Cir. 2016) (affirming dismissal for lack of personal jurisdiction where there was no evidence that purported agents acted within their scope of authority, and therefore principal had not "purposefully availed itself of privilege of conducting

business" in forum); *Newman v. Capitol Life Ins. Co.*, 45 F. Supp. 3d 376, 379 (S.D.N.Y. 2014) ("A purported agent's *ultra vires* act, of which the principal had no actual knowledge, let alone consent or control, cannot constitute such 'purposeful availment,' and therefore cannot bind the principal for jurisdictional purposes.") (citation omitted). Plaintiff's specific personal jurisdiction theory therefore fails at the threshold of due process.

### 2. Plaintiff cannot establish specific personal jurisdiction under any agency theory.

Even assuming *arguendo* Plaintiff could somehow overcome his failure to allege or establish that Charter purposefully directed outbound telemarketing calls to Illinois, Plaintiff's agency theories fail on multiple additional grounds. Properly viewed, with only factually supported allegations taken as true, Plaintiff's FAC alleges at most a relationship between Charter and EXP, which is insufficient as a matter of law. *See Warciak v. Subway Rest., Inc.,* 949 F.3d 354, 357 (7th Cir. 2020). Additionally, and in any event, Charter's unrefuted evidence confirms EXP was not authorized to call Plaintiff in Illinois (or anywhere else) on behalf of Charter.

#### a. **EXP did not have actual authority.**

As to actual authority, Plaintiff is required to allege facts establishing that Charter controlled the manner and means by which EXP made outbound telemarketing calls. *See Bilek v. Fed. Ins. Co.*, No. 19 C 8389, 2020 WL 3960445, at *5 (N.D. Ill. July 13, 2020) (right to control agent's actions in making outbound telemarketing calls is essential element); *cf. Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 776 (N.D. Ill. 2014) (allegations that defendant controlled quality, timing, volume, and geographic location of calls sufficient). Plaintiff provides scant and vague allegations in this regard, alleging only that Charter had general control over its "retail partners" and wholly failing to allege that Charter controlled the manner and means by which EXP could make outbound telemarketing calls. *See* FAC ¶¶ 23-29. Because Plaintiff has

failed to allege this "essential element" of actual authority, he cannot meet his burden to establish a *prima facie* case of specific personal jurisdiction on an actual authority agency theory. *See*, *e.g.*, *Bilek*, 2020 WL 3960445, at *5-6 (granting motion to dismiss for lack of personal jurisdiction where allegations failed to establish purported agent had actual authority to make outbound telemarketing calls); *Clemons v. State Farm Mut. Ins. Co.*, No. 1:20-cv-1050, 2020 WL 4193997, at *4 (C.D. Ill. July 21, 2020) ("Without any allegation demonstrating Defendant's control over the alleged telemarketers as to the calls at issue, it cannot be inferred such telemarketers possessed a reasonable belief they were acting pursuant to Defendant's direction and control.").

Nor can Plaintiff credibly make such allegations because, again, EXP was **contractually prohibited** from making outbound telemarketing calls. Gelner Decl., ¶¶ 7-8; Bhattacharya Decl., ¶¶ 4-5; *see also Shanahan v. Nat'l Auto Protection Corp.*, No. 1:19-cv-03788, 2020 WL 3058088, at *4 (N.D. Ill. June 9, 2020) (contractual requirement that telemarketing vendor comply with state and federal laws and regulations "cut[] against Plaintiff's claim that [defendant] directed [telemarketing vendor] to make calls in violation of the TCPA"). Because of that contractual prohibition, even if it made the alleged calls (which it denies), EXP's jurisdictional contacts could not be imputed to any Spectrum Entity, and certainly not Charter, through any actual authority theory. *See Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 825 F.3d 793, 798 (7th Cir. 2016) (no actual authority where activity prohibited by parties' agreement in TCPA context); *Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 939 (7th Cir. 2016) (no actual authority in TCPA case because "[f]or this type of agency to exist, Clark must have directly spoken or written to B2B, telling it to send the nearly 5,000 fax ads across multiple states.").

The new allegations in Plaintiff's FAC regarding prior lawsuits against Charter and EXP's CEO, FAC ¶¶ 30-42, do not alter this conclusion, as a review of the cited lawsuits readily

demonstrates they provide Plaintiff no factual support. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (recognizing court may consider documents central to/referenced in complaint and information that is properly subject to judicial notice). Neither *State of Missouri v. Charter* nor *United States v. Dish Network, LLC* involved Charter's retail partner program, much less EXP. The *State of Missouri v. Charter* matter involved OTM Vendors—which are expressly engaged to telemarket—not retail partners like EXP, who, as shown above, are **contractually prohibited** from making telemarketing calls. *See State of Missouri v. Charter*, No. 4:15-cv-01593, Dkt. 1 ¶¶ 38-39 (E.D. Mo. filed Oct. 19, 2015) (alleging Charter contracted with Empereon Marketing, SatCom Marketing, LLC, MarketLink, Inc., Invenio Marketing, and iPacesetters "to make **outbound telemarketing calls** on its behalf") (emphasis added).

Similarly, *Dish Network* involved retailers who performed a variety of functions for **Dish Network Corporation**, including outbound telemarketing—unlike Charter's retail partners—and, in any event, Charter was not a party in that lawsuit, and Satellite Systems (not EXP) was the Dish Network retailer at issue. *United States v. Dish Network, LLC*, 256 F. Supp. 3d 810, 858-859 (C.D. Ill. June 5, 2017). The only reference to Charter in *Dish Network* is non-probative, as it comes in a Dish Network executive's irrelevant, hearsay speculation that Charter knew that an outbound telemarketing vendor (Satellite Systems) was using an automated telephone dialing system ("ATDS") or a pre-recorded or artificial voice ("PRV") (which are lawful with appropriate consent but, regardless, are not at issue here) to make calls. *Id.* at 859. The Dish Network Executive did not suggest Charter knew EXP (or even a retail partner like EXP) was making outbound calls in violation of the marketing rules applicable to retail partners. *Id.* Therefore, even if Charter had known that a party expressly hired to conduct telemarketing (Satellite Systems) was using an ATDS or a PRV (which Charter denies), that would not lend factual support to Plaintiff's

12

insufficient allegation that Charter supposedly had reason to know a party expressly prohibited from telemarketing (EXP) was making outbound calls, much less in violation of the NDNCR rules.

Likewise, the Federal Trade Commission's prior lawsuit against EXP's CEO—Ms. Bhattacharya—did not involve EXP. That lawsuit concerned Ms. Bhattacharya's leadership role in a separate company, Pairsys, Inc, did not involve TCPA violations, and concluded (via settlement with no admission of liability) three years before EXP became a retail partner. *Federal Trade Comm'n v. Pairsys, Inc.*, *et al.*, No. 1:14-cv-1192, Dkts. 47 & 52 (N.D.N.Y. filed July 21, 2015) (explaining claims and terms of settlement agreement). And, as part of the settlement, Ms. Bhattacharya was *prohibited* from telemarketing, and both she and companies affiliated with her, including EXP, were subject to compliance monitoring from the FTC. *Id*. dkt. 47 at 4, 17-18. Therefore, even if Charter had been aware of this litigation, which it was not because the litigation did not involve EXP, it would have made it even *more unlikely* that EXP would make prohibited outbound calls while being monitored by the FTC. Gelner Decl., ¶ 17.

Plaintiff's allegations concerning EXP's online content are similarly inapposite. According to Plaintiff, EXP advertised Charter's cable and internet services through a website containing terms and conditions that purportedly authorized it to make outbound telemarketing calls and posted job listings for call center agents to make outbound calls. FAC ¶¶ 46-47. Putting the final nail in the non-probative coffin, however, Plaintiff also alleges EXP was making calls for a Charter competitor simultaneously with the calls at issue. FAC ¶ 59. Thus, even if Charter had been aware of EXP's alleged online content, it says nothing about *Charter* authorizing EXP to make outbound telemarketing calls __*on behalf of Charter* in violation of a written agreement to the contrary__, much less calls to a residential telephone number in a non-serviced area. *Cf. Monco*, 2019 WL 952138, at *14 (rejecting personal jurisdiction where "the only contacts [with Illinois]

even remotely related" to plaintiff's claim were "'two causal links in the chain too many'"). Indeed, Charter never received any outbound telemarketing complaints about EXP. Gelner Decl., ¶ 16. For all of these reasons, Plaintiff has not alleged and cannot establish personal jurisdiction based on actual authority.

### b. EXP did not have apparent authority.

As to apparent authority, Plaintiff is required to allege facts establishing a manifestation from Charter cloaking EXP with authority to make the calls at issue. *Warciak*, 949 F.3d at 357 (apparent authority "exists when a third[] party reasonably relies on the principal's manifestation of authority to an agent"); *see also Shanahan*, 2020 WL 3058088, at *6 (requiring statement from principal, not agent); *accord Clemons*, 2020 WL 4193997, at *6. He also must allege facts explaining how he reasonably relied, to his detriment, on this manifestation. *Warciak*, 949 F.3d at 357; *Clemons*, 2020 WL 4193997, at *6. Plaintiff's FAC fails on both counts.

Taking Plaintiff's allegations on their face, the only communications he alleges receiving from Charter were two emails sent after the November 12 call. *See* FAC ¶¶ 67-68. He does not allege, however, that those emails contained any statement from Charter representing that it made EXP its agent for purposes of the outbound telemarketing call(s). *Id.*; *Shanahan*, 2020 WL 3058088, at *6 (such failure "defeats [plaintiff's] [personal jurisdiction] theory based upon apparent authority"). Moreover, Plaintiff fails to allege any facts indicating that he relied to his detriment on these after-the fact emails; indeed, Plaintiff admits that that he only "pretend[ed] to be interested in the services" offered on the November 12 call. FAC ¶ 61; *Warciak*, 949 F.3d at 357 (affirming dismissal because complaint "fail[ed] to allege sufficient facts to show how [plaintiff] reasonably relied, to his detriment, on any apparent authority with which he alleges [principal] cloaked [purported agent]"); *accord Clemons*, 2020 WL 4193997, at *6. At most, Plaintiff alleges only the existence of a relationship between Charter and EXP, which binding

14

Seventh Circuit authority holds is not enough to establish a telemarketer's apparent authority to act on behalf of a principal. *Warciak*, 949 F.3d at 356-57. Thus, Plaintiff cannot establish specific personal jurisdiction through apparent authority.

### c. Charter did not ratify EXP's alleged outbound calls to Illinois.

Finally, "[g]iven that [Plaintiff] failed to sufficiently allege that [Charter and EXP] exhibited actual or apparent authority, ratification is also unavailable." *Warciak v. Subway Rest., Inc.*, No. 1:16-cv-08694, 2019 WL 978666, at *3 (N.D. Ill. Feb. 28, 2019). Even if it were, Plaintiff has not alleged any facts probative of the alleged ratification, as discussed *supra* Parts C.2.a-b. Moreover, Plaintiff makes no allegation that Charter knowingly accepted any benefit from the alleged calls *to him*, as required to plausibly allege ratification. *Compare* FAC ¶ 49 ("Charter knowingly accepted the benefits of the telemarketing calls placed by its Retailer Partners, including EXPINFO, by accepting the new customer contracts that were generated for Charter as a result of the calls") *with Bilek*, 2020 WL 3960445, at *5 (ratification argument failed where "Bilek argues that [Defendant] accepted benefits from other calls, [but] he does not allege that [Defendant] received any benefit *from the calls made to him*.) (emphasis added); *see also Smith*, 30 F. Supp. 3d at 779 (similar); *Bridgeview Health Care Ctr., Ltd. v. Clark*, No. 09-cv-5601, 2014 WL 7717584, at *6 (N.D. Il. Nov. 21, 2014), *aff'd* 816 F.3d 935, 939 (7th Cir. 2016) (no ratification without benefit conferred from conduct); *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins.*, 376 F.3d 664, 677 (7th Cir. 2004) ("[R]atification requires that the principal have full knowledge of the facts and the choice to either accept or reject the benefit of the transaction."); *cf. Johansen v. Homeadvisor, Inc.*, 218 F. Supp. 3d 577, 588 (S.D. Ohio 2016) (no ratification where purported agent contractually agreed to comply with law).

All of Plaintiff's agency theories—actual, apparent, and ratification—are therefore fatally deficient, and the FAC should be dismissed.

15

DATED: August 6, 2020

/s/ Ryan D. Watstein
Ryan D. Watstein (*pro hac vice*)
Georgia Bar No. 266019
Jessica Gallegos (*pro hac vice*)
Georgia Bar No. 759709
Andrew Swindle (*pro hac vice*)
Georgia Bar No. 522156
KABAT CHAPMAN & OZMER LLP
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
Tel: (404) 400-7307
rwatstein@kcozlaw.com
jgallegos@kcozlaw.com
aswindle@kcozlaw.com

and

/s/ Justin Penn
Justin M. Penn
Joseph D. Kern
HINSHAW & CULBERTSON, LLP
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606
Tel: (312) 704-3000
jpenn@hinshawlaw.com
jkern@hinshawlaw.com

*Attorneys for Defendant Charter Communications, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2020, I filed the foregoing **DEFENDANT CHARTER COMMUNICATIONS, INC.'S MEMORANDUM IN SUPPORT OF RENEWED MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to the following counsel of record in this action:

Keith James Keogh
Timothy J. Sostrin
**KEOGH LAW, LTD.**
55 W. Monroe
Suite 3390
Chicago, IL 60603
keith@keoghlaw.com
tsostrin@keoghlaw.com

Anthony Paronich
**PARONICH LAW, P.C.**
350 Lincoln St., Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com

*Counsel for Plaintiff George Moore*

> */s/ Ryan D. Watstein*
> Ryan D. Watstein (*pro hac vice*)
>
> *One of the Attorneys for Defendant Charter Communications, Inc.*