## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20-cv-00980 |
| v. | ) | |
| | ) | Judge Thomas M. Durkin |
| CHARTER COMMUNICATIONS, INC. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER AND OPINION

Plaintiff George Moore ("Moore") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, against Charter Communications, Inc. ("Charter"). Moore alleges that Charter is vicariously liable for violating the TCPA because ExpInfo, Inc. ("EXP") impermissibly placed multiple telemarketing calls on Charter's behalf in November 2019. Charter moved to dismiss Moore's complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. R. 26. For the following reasons, Charter's motion is granted.

### Background

Moore is an Illinois resident. R. 22 ¶ 5. Charter is a Delaware corporation with its principal place of business in Connecticut. *Id*. ¶ 6. On November 11, 2019, Moore received two unsolicited phone calls, both of which he declined. *Id*. ¶¶ 54-55. On November 12, Moore received another phone call from the same number that dialed him the day before. *Id*. ¶ 57. This time, Moore picked up.

According to Moore, the caller was a telemarketer from EXP offering a discounted price for TV, internet, and phone services. *Id*. ¶¶ 57-58. When Moore asked where he was calling from, the telemarketer replied, "Spectrum and AT&T Services." *Id*. ¶ 59. Charter sells television, Internet, and voice services to customers through its Spectrum brand. *Id*. ¶ 7. Moore says that the telemarketer told him that EXP was running a credit check to see if he qualified for Charter's services and also gave Moore an installation date. *Id*. ¶¶ 65-66. Immediately after the phone call, Moore received two emails which identified Charter by name and said, "Thank you for choosing Charter." *Id*. ¶ 67. The emails asked Moore to complete his order for Charter's services. *Id*. Moore does not allege that he completed the order.

Moore says that the telemarketing calls should have never occurred because his phone number is on the National Do Not Call Registry. *Id*. ¶¶ 52-53. Moore filed this class action lawsuit against Charter alleging violations of the TCPA, which prohibits telemarketing calls to phone numbers on the Registry. *See* 47 U.S.C. § 227, *et seq*. Moore does not allege that Charter placed the phone calls; instead, and as stated above, he argues that Charter is vicariously liable for violating the TCPA because EXP made the calls on Charter's behalf. To this point, Moore alleges that Charter contracts with retail partners, such as EXP, to market Spectrum-branded services. R. 22 ¶ 23. He says that Charter advertises these partnership opportunities to call centers and authorizes them to place outbound telemarketing calls on Charter's behalf. *Id.* ¶ 24. According to the Moore, Charter's partners are provided various materials to market Charter's services, and Charter's own employees

regularly monitor the performance of the partnerships to ensure compliance with Charter's marketing rules. *Id.* ¶ 27-28. He also alleges that Charter has the right to give instructions or directions to its retail partners and may terminate the parties' relationship by revoking the partners' authority. *Id.* ¶ 29. Moore alleges that Charter and EXP entered into a partnership agreement in August 2018. *Id.* ¶ 43.

For its part, Charter submits sworn declarations affirming that one of its subsidiaries entered into a partnership agreement with EXP to market and sell Spectrum services. *See, e.g.*, R. 27-1. But according to the declarations, that agreement explicitly forbid EXP from selling Spectrum services through outbound telemarketing calls, and required EXP to comply with all applicable laws, ordinances, and rules in fulfilling its contractual obligations. *See* R. 27-1 ¶¶ 6-7. Charter submitted an executed copy of the marketing rules governing the agreement, which lists "outbound telemarketing" as a prohibited sales tactic. *See id.* at 6-7. Charter also submitted a sworn declaration from EXP's CEO, Tiya Bhattacharya, who confirms that EXP was not allowed to place outbound telemarketing calls on Charter's behalf. *See* 19-4 ¶ 5. Bhattacharya's declaration further states that she never informed Spectrum of how EXP placed Moore's order for Charter's services. *Id.* ¶ 12. Charter's position, therefore, is that it never placed the phone calls in question nor did it instruct EXP to place them.

After Moore filed his complaint, Charter moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. R. 18. In response, Moore updated his pleadings and filed an amended complaint. R. 22. Charter then

moved again to dismiss for lack of personal jurisdiction. R. 26. The Court considers that motion now.

## Standard

"A complaint need not include facts alleging personal jurisdiction. However, once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When the court rules on the motion without a hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *Id*. The court reads "the complaint liberally, in its entirety, and with every inference drawn in favor" of the plaintiff to determine whether it has done so. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 877–78 (7th Cir. 2006). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783. "[T]he plaintiff is entitled to have any conflicts in the affidavits (or supporting materials) resolved in its favor." *Id*. Unrefuted facts in defendant's affidavits, however, will be taken as true. *GCIU-Employer Ret. Fund*, 565 F.3d 1018, 1023 (7th Cir. 2009).

## Analysis

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler*

4

*AG v. Bauman*, 571 U.S. 117 (2014)). The Illinois long-arm statute requires nothing more than the standard for federal due process: that the defendant have sufficient contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction: general and specific. General jurisdiction exists when the party's affiliations with the forum state "are so constant and pervasive as to render [it] essentially at home" there. *Daimler AG*, 571 U.S. at 122. Plaintiff does not assert that this Court may exercise general jurisdiction over Charter, so the Court considers only specific jurisdiction.

Specific jurisdiction grows out of "the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284. It requires that "(1) the defendant [ ] purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 286.

Where, as here, the plaintiff's claims are for intentional torts, the purposeful availment inquiry focuses on whether the conduct underlying the claims was

purposely directed at the forum state. *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). In such cases, courts look to whether the plaintiff has shown "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Id.* at 703 (citing *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)). This is known as the *Calder* test.

Applying these principles here, any specific personal jurisdiction over Charter must arise from the relevant phone calls. Charter submits sworn declarations, however, attesting that it did not call Moore or otherwise direct its actions at Illinois as related to this suit. R. 19-1 ¶¶ 18, 20-21; R. 19-2 ¶ 10. Moore counters that this Court may nevertheless exercise specific personal jurisdiction over Charter because EXP acted as Charter's agent when the phone calls were placed. R. 31 at 2. In other words, because a principal may be subject to specific jurisdiction based upon the actions of its agent, *see Wisconsin Elec. Mfg. Co. v. Pennant Prods., Inc.*, 619 F.2d 676, 677–78 (7th Cir. 1980), Moore contends that this Court may exercise jurisdiction over Charter by virtue of its agency relationship with EXP. *See* R. 22 ¶ 57; R. 31 at 9-15. The Court therefore considers whether Moore plausibly alleges an agency relationship in order to confer specific jurisdiction.

## A.   Specific Jurisdiction Alleged Through Acts of An Agent

An agency relationship arises when a "person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise

6

consents so to act." Restatement (Third) of Agency § 1.01 (2006). An agent's authority can be either actual or apparent. *Moriarty v. Glueckert Funeral Home*, Ltd., 155 F.3d 859, 865–66 (7th Cir. 1998). Moore argues that EXP had actual and apparent authority to place the telemarketing calls on Charter's behalf. In the alternative, Moore argues that Charter ratified EXP's conduct.

## 1. Actual Authority

Actual authority exists when "at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent to so act." Restatement (Third) of Agency § 2.01 (2006). Actual authority can be express or implied. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000). Express authority exists when a "principal explicitly grants the agent the authority to perform a particular act." *Id*. As best the Court can tell, Moore does not allege that Charter explicitly granted EXP the authority to place outbound telemarketing calls to Illinois residents. Express authority is therefore lacking.

That leaves implied actual authority. Implied authority "is inherent in an agent's position and is, simply, actual authority proved through circumstantial evidence." *Moriarty*, 155 F.3d at 866. A principal grants "implied actual authority to an agent when the principal's reasonably interpreted words or conduct would cause an agent to believe that the principal consents to have an act done on her behalf." *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 831 (N.D. Ill. 2016). A principal's conduct can include "prior acquiescence in unauthorized transactions,"

7

which may lead an agent "to infer that the principal will not object to similar unauthorized acts in the future; the agent may, for example, come to believe that the principal does not intend a particular instruction or a type of instruction to be taken seriously." Restatement (Third) of Agency § 2.02, Reporter's Note to Comment f.

Moore argues that EXP had implied authority to place telemarketing calls on behalf of Charter but none of his arguments are persuasive. Moore argues first that Charter's customers, stores, and online advertising efforts in Illinois led EXP to believe that Charter authorized telemarketing calls aimed at Illinois residents. *See* R. 31 at 12. But this argument fails to account for Charter's unrefuted contention that it expressly forbid EXP from placing such calls, nor does it plausibly explain why EXP would think that Charter consented to an act that violated the parties' marketing agreement. *See* 27-1 ¶¶ 7-9; *see also* R. 19-4 ¶¶ 5-6. Moore's first argument is therefore rejected.

Moore argues next that EXP had implied authority because Charter knew that EXP's services include the making of outbound telemarketing calls. *See* R. 31 at 13. Moore points to a page on EXP's website which discloses in fine print that EXP may make telemarketing calls under certain conditions. *See id.* (citing R. 31-13). Moore also points to an online job listing that seeks EXP call center operators to make outbound telemarketing calls on behalf of Spectrum, Comcast, DirectTV, Dish Network, Verizon, RCN, and "many more." *See* R. 31-12. Even assuming that Charter knew about the language on EXP's website as well as the job listing, Moore still fails to plausibly allege that EXP had implied authority to place the calls at issue. The

general statement appearing on EXP's website makes no reference to Charter and the parties' marketing agreement does not prohibit EXP from making outbound telemarketing calls on behalf of clients other than Charter. *See* R. 27 at 6-7. Further, even though the job listing references Spectrum, it also lists five other companies, and it's not plausible that Charter's knowledge of it conferred implied authority upon EXP to engage in the same conduct that Charter expressly prohibited. In any event, neither the website language nor the job listing reference Illinois.

Finally, Moore argues that Charter signaled its acquiescence to the telemarketing calls by hiring EXP while knowing that its CEO was previously sued for allegedly violating the TCPA. *See* R. 22 ¶¶ 38-42; R. 31 at 13 (citing *FTC v. Pairsys*, No. 1:14-cv-01192 (N.D.N.Y. filed Sept. 30, 2014)). Charter responds by stating that its partnership department first learned of *FTC v. Pairsys* from reading Moore's lawsuit. *See* R. 27-1 ¶ 17. Even if the Court assumes that Charter knew about the lawsuit before it partnered with EXP, Moore nevertheless fails to plausibly allege that EXP had implied authority to place outbound telemarketing calls because, again, Charter explicitly told EXP that it could not place such calls on Charter's behalf. In other words, the Court cannot infer that Charter acquiesced to EXP's conduct since the unrefuted facts show that Charter forbid EXP from placing telemarketing calls.[1] *See* R. 27-1 at 6-7.

---

[1] Moore similarly argues that EXP reasonably believed it had implied authority to place the phone calls on Charter's behalf because the state of Missouri previously sued Charter for telemarketing violations. *See* R. 31 at 13 (citing *State of Missouri v. Charter*, No. 4:15-cv-01593 (E.D. Mo. Oct. 19, 2015)). But Moore has not alleged any connection between that lawsuit and EXP.

Moore's citations to case law do not to cure the defects in his amended complaint. For example, *In re Montironics Int'l* is distinguishable because the principal there "encouraged dealers to use automated dialers" and "received dozens of complaints involving hundreds of consumers." 2019 WL 7835630, at *8 (N.D.W. Va. Apr. 3, 2019). *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 660–61 (4th Cir. 2019) is likewise inapposite because "an array of witnesses" testified that "Dish was aware of [agent's] legal violations, took no meaningful action to ensure compliance, and profited from [agent's] actions." No similar allegations appear here.

For all these reasons, Moore has not provided sufficient allegations to support a *prima facie* case of personal jurisdiction based on actual authority.

2. Apparent Authority

Even if EXP lacked actual authority, Moore argues that EXP still exercised apparent authority. Apparent authority "exists when a third-party reasonably relies on the principal's manifestation of authority to an agent." *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 357 (7th Cir. 2020) (citation omitted); *see also Opp*, 231 F.3d at 1065 (quoting *Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp.*, 577 N.E.2d 1344, 1350 (Ill. 1991)) ("Apparent authority arises when a principal creates, by its words or its conduct, the reasonable impression in a third party that the agent has the authority to perform a certain act on its behalf."). Statements by an agent are insufficient to create apparent authority. *Warciak*, 949 F.3d at 357 (citation omitted).

Moore argues that EXP had apparent authority to act on behalf of Charter because Charter provides EXP access to its customer service systems and because

Moore received two emails from Charter following his phone call with EXP. *See* R. 31 at 14 (quoting R. 31-19 ¶¶ 13-14). Moore says that the emails were sent to the same email address that he provided to EXP, and that they asked him to complete the same order that he initiated over the phone. *See id.*

The problem for Moore is that he does not allege, as he must, how he reasonably relied on EXP's apparent authority. *See Warciak*, 949 F.3d at 357 (affirming dismissal where complaint failed to sufficiently allege that plaintiff "reasonably relied, to his detriment, on any apparent authority" that principal conferred to agent). Apparent authority turns on the words or conduct that the principal creates, so the first time Moore could have plausibly thought that such authority existed was after he received two emails from Charter. *See* R. 22 ¶ 67. But Moore does not allege that he did anything after receiving those emails. He did not purchase Charter's services or even seek additional information about them. That is not surprising since Moore states in the amended complaint that he talked to the telemarketer "pretending to be interested in [Charter's] services." R. 22 ¶ 61; *see also* R. 31 at 6 (Moore describing how he "feigned interest in the offer"). Because Moore does not make any allegations as to reasonable reliance, his apparent authority argument fails.

3. Ratification

Finally, Moore argues that Charter created an agency relationship with EXP by ratifying EXP's conduct. *See* R. 31 at 13-14. "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting

with actual authority." Restatement (Third) of Agency § 4.01(1) (2006). "[K]nowing acceptance of the benefits of a transaction ratifies the act of entering into the transaction." *Id*. § 4.01, Comment d.

Moore contends that Charter ratified EXP's conduct by emailing him after EXP called him. *See* R. 31 at 13-14; R. 22 ¶ 67. Moore further contends that Charter knowingly accepted new customer contracts based on phone calls placed by EXP. *See* R. 31 at 13-14; R. 22 ¶ 49. But Moore does not allege that Charter knowingly accepted any benefit based on the EXP calls made to him. *See Bilek v. Fed. Ins. Co.*, No. 19 C 8389, 2020 WL 3960445, at *5 (N.D. Ill. July 13, 2020) (rejecting ratification argument where plaintiff did "not allege that [Defendant] received any benefit from the calls made to him."); *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 745–46 (N.D. Ill. 2014) (no ratification where plaintiff failed "to allege that she did business with Sempris or Provell as a result of Quality's calls"); *Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2014 WL 7717584, at *6 (N.D. Ill. Nov. 21, 2014) (similar). Nor has Moore put forth any allegations challenging Charter's declaration that the order initially placed over the phone was never completed. *See* R. 27-1 ¶¶ 10-12. Plaintiff's ratification argument therefore fails as well.

Because Moore does not sufficiently allege a plausible agency relationship between Charter and EXP, this Court finds that he does not, in turn, make out a *prima facie* case of personal jurisdiction against Charter.

## Conclusion

For the reasons explained above, this Court grants Charter's motion to dismiss for lack of personal jurisdiction, R. 26. Moore may file a motion for leave to file an amended complaint if he believes he can cure the deficiencies described in this opinion. That motion must be filed within 30 days or this case will be dismissed with prejudice.

ENTERED:

_Thomas M Durkin_

_____
Honorable Thomas M. Durkin
United States District Judge

Dated:  October 27, 2020

13